2002 WY 151

**BOARD OF COUNTY COMMISSIONERS FOR SUBLETTE COUNTY,**
Wyoming, Petitioner,

v.

**EXXON MOBIL CORPORATION,**
Respondent.

No. 01–122.

Supreme Court of Wyoming.

Oct. 9, 2002.

Rehearing Denied Nov. 5, 2002.

---

John C. McKinley and Nancy D. Freudenthal of Davis & Cannon, Cheyenne, WY, Representing Petitioner. Argument by Mr. McKinley.

* Chief Justice at time of oral argument.

Lawrence J. Wolfe and Patrick R. Day of Holland & Hart, Cheyenne, WY; and Brent R. Kunz of Hathaway, Speight & Kunz, Cheyenne, WY, Representing Respondent. Argument by Mr. Day.

Vicci M. Colgan, Chief Deputy Attorney General, Representing Amicus Curiae Wyoming Department of Revenue in support of Respondent.

Before HILL, C.J., and GOLDEN, LEHMAN,* and VOIGT, JJ., and KAUTZ, D.J.

KAUTZ, District Judge.

[¶ 1] The Wyoming Department of Revenue (DOR) determined and certified valuations of Exxon Mobil's gas production for the tax year 1998. That certification was dated June 24, 1998. Apparently unhappy with the amount of tax Sublette County would receive, the Sublette County Commissioners filed an administrative contested case with the Wyoming State Board of Equalization (SBOE) on July 14, 1998. In that case the County claimed that 1998 tax assessments against Exxon Mobil were incorrect because Exxon Mobil improperly reported gas production in the county, because improper deductions were allowed in valuing the production, and because flared or vented gas was not included in Exxon Mobil's production.

[¶ 2] During the course of the case, Sublette County sought to compel discovery from Exxon Mobil about its gas production. The County sought records regarding production for years prior to 1997 as well as the year in question. Exxon Mobil objected and resisted that discovery, claiming it was beyond the scope of the contested case. The SBOE issued an order compelling discovery, and Exxon Mobil filed a petition for writ of review of the discovery order with the district court. The district court determined that Sublette County's administrative case was improper because it failed to identify specific errors on the part of the DOR. The district court held that the administrative case improperly challenged the conduct of Exxon Mobil and attempted to invade the statutory

duties of the DOR. Further, the district court required substantial modification of the County's claims before discovery could proceed.

[¶ 3] Sublette County then petitioned this court for a Writ of Review of the district court's decision. We granted that Petition to address, in part, the "County's role in a contested case before the Board of Equalization pursuant to Wyo. Stat. Ann. § 39–11–102.1(c) (LexisNexis 2001)."

[¶ 4] We affirm the district court to the extent of its order and remand the case to the district court to require dismissal.

### ISSUES

[¶ 5] Petitioner Board of County Commissioners for Sublette County lists the following issues:

I.   Whether the district court Order on Writ of Review violates the Wyoming Administrative Procedure Act ("WAPA"), Wyoming Tax Statutes, Wyoming case law, and Sublette County's due process rights?

II.  Whether the State Board of Equalization's discovery order in this contested case was consistent with law and within the Board's authority?

III. Whether the district court had subject matter jurisdiction of the State Board of Equalization's discovery order?

Respondent, Exxon Mobil Corporation, states the issues as:

1.   Does Sublette County have statutory authority to appeal decisions of the Wyoming Department of Revenue to the State Board of Equalization?

2.   If the County has such authority, what final decisions may the County appeal?

3.   Did the district court correctly determine that the State Board failed to limit the scope of the County's appeal to errors by the Department of Revenue, as required by law?

4.   Did the district court properly accept Exxon Mobil's Petition for Writ of Review?

[¶ 6] We granted the Petition for Writ of Review in this case finding that it presented an issue of importance relating to a county's role in a contested case before the Board of Equalization pursuant to Wyo. Stat. Ann. § 39–11–102.1(c) (LexisNexis 2001). The central issue here is whether Sublette County has statutory authority to bring the contested case before the SBOE. A secondary issue is whether the district court properly defined the scope of such a contested case. A final issue is whether the district court properly accepted Exxon Mobil's petition for writ of review.

### STANDARD OF REVIEW

[¶ 7] Sublette County's right (or lack thereof) to an appeal is statutory and jurisdictional. *Basin Elec. Power Coop., Inc. v. Dep't of Rev.*, 970 P.2d 841, 847 (Wyo.1998) (citing *Pritchard v. State Div. of Voc. Rehab., Dep't of Health & Social Servs.*, 540 P.2d 523, 524 (Wyo.1975)). Statutory interpretation is a question of law, for which the standard of review is *de novo*. *Sellers v. Dooley Oil Transp.*, 2001 WY 44, ¶ 10, 22 P.3d 307, ¶ 10 (Wyo.2001) (quoting *Cargill v. State, Dep't of Health, Div. of Health Care Financing*, 967 P.2d 999, 1001 (Wyo.1998)).

[¶ 8] This court is directed to "decide all relevant questions of law." Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001). We are not bound by the decision of the district court, but conduct an independent inquiry into the matter just as if it had proceeded directly to us from the agency. *Hat Six Homes, Inc. v. State, Dep't of Employment*, 6 P.3d 1287, 1291 (Wyo.2000).

### MINERAL TAXATION IN WYOMING

[¶ 9] The Wyoming Constitution mandates that mineral taxes be assessed differently than normal property taxes. Wyo. Const. art. 15, § 3, entitled *Taxation of mines and mining claims*, reads:

All mines and mining claims . . . shall be taxed in addition to the surface improvements, and *in lieu* of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the

product of all mines shall be taxed in proportion to the value thereof.

(Emphasis added.) This has been called "[t]he most noteworthy feature of the Wyoming property tax . . . ." E. George Rudolph, *Wyoming Local Government Law* 230 (1985). Commenting on Wyo. Const. art. 15, § 3, two other authors indicate:

This section provides for a gross products tax on all valuable minerals in proportion to their value. This tax [is] in addition to taxes paid on surface improvements, but it is in lieu of taxes on the land. The legislature is responsible for determining the appropriate tax rate.

Robert B. Keiter and Tim Newcomb, *The Wyoming State Constitution* 218 (1993).

[¶ 10] It is interesting to note that Dean Rudolph wrote, "In spite of its importance, the gross products tax has not, over the years, presented many legal issues of a fundamental nature. Most of the issues that do arise are beyond the scope of this work *because assessments are handled entirely at the state level.*" E. George Rudolph, *Wyoming Local Government Law* 230 (emphasis added and footnote omitted). At the risk of pointing out the obvious, Rudolph's book is about Wyoming local government, with many chapters about counties, and yet he felt the gross products tax to be beyond the scope of his work.

[¶ 11] The process of "valuing" mineral production for tax purposes is lengthy, involving these steps:

1. The taxpayer files monthly severance tax returns. Wyo. Stat. Ann. § 39–14–207(a)(v) (LexisNexis 2001).

2. The taxpayer files an ad valorem tax return by February 25 in the year following production, and certifies its accuracy under oath. Wyo. Stat. Ann. § 39–14–207(a)(i) (LexisNexis 2001).

3. The Department of Revenue values the production at its fair market value based on the taxpayer's ad valorem return. Wyo. Stat. Ann. § 39–14–202(a)(ii) (LexisNexis 2001).

4. The Department of Revenue then certifies the valuation to the county assessor of the county the minerals were produced in to be entered on the assessment rolls of the county. Wyo. Stat. Ann. § 39–14–202(a)(iii) (LexisNexis 2001).

5. The taxpayer then has one year to file an amended ad valorem return requesting a refund. Wyo. Stat. Ann. § 39–14–209(c)(i) (LexisNexis 2001).

6. The Department of Audit has five years from the date the return is filed to begin an audit, and must complete the audit within two years. Wyo. Stat. Ann. § 39–14–208(b)(iii), (v)(D), (vii) (LexisNexis 2001).

7. Any assessment resulting from an audit must be issued within one year after the audit is complete. Wyo. Stat. Ann. § 39–14–208(b)(v)(E) (LexisNexis 2001).

[¶ 12] During the valuation process the taxpayer and the DOR are statutorily provided with rights to appeal. Wyo. Stat. Ann. § 39–14–203(b)(viii) and (ix) (LexisNexis 2001) provide for the taxpayer and the DOR to be involved in deciding the valuation method used. These statutes specify that the taxpayer or the DOR may appeal the valuation method to the SBOE. Wyo. Stat. Ann. § 39–13–102(n) (LexisNexis 2001) specifies that the taxpayer may object to the certified valuation. Wyo. Stat. Ann. § 39–14–208(b)(v)(F) specifies that a taxpayer may file a response or appeal to an audit. If a dispute arises during the valuation process, the DOR and the taxpayer may reach a compromise and settlement about the amount of tax due. Wyo. Stat. Ann. § 39–11–103(a)(ii). None of these specific statutes about appeals or settlement give any appeal rights to counties. Counties are not involved in the valuation process.

## DISCUSSION

### I. *Judicial Estoppel.*

[¶ 13] The parties' dispute predates this case. In *Exxon Corp. v. Bd. of County Comm'rs, Sublette County,* 987 P.2d 158 (Wyo.1999), Exxon argued that the County should have appealed to the SBOE (as it did here) rather than petitioning under Wyo. Stat. Ann. § 39–1–304(a)(xiv) (Michie 1997)

(Repealed, now Wyo. Stat. Ann. § 39–11–102.1(c)(x) (Lexis 2001)). The County now asserts that Exxon is estopped from arguing that a county cannot appeal, because it took an opposite position in the prior case.

[¶ 14] This argument is fatally flawed because "in no event will judicial estoppel apply to legal conclusions based on undisputed facts." *Ottema v. State ex rel. Worker's Compensation Div.*, 968 P.2d 41, 46 (Wyo.1998)(citing *Bredthauer v. TSP*, 864 P.2d 442, 445 (Wyo.1993)). It is undisputed that Sublette County filed an appeal with the SBOE, and whether the county had the power to do this is a question of law. Judicial estoppel is inapplicable.

## II. *Timeliness of Review/Mootness.*

[¶ 15] The SBOE entered an order compelling discovery on April 12, 2000. W.R.A.P. 13.03(a) required a petition for review "within 11 days after entry of the order from which relief is sought." (A 2001 amendment changed the time to 15 days.) Exxon did not file its petition with the district court within that eleven-day period. The discovery dispute continued, and the SBOE entered additional discovery orders on October 2, 2000, and October 26, 2000. The October 26, 2000 order vacated the October 2, 2000 order and set specific times and procedures to follow in discovery. Exxon Mobil filed a petition for writ of review with the district court on November 2, 2000. The County argues that because no petition was filed within eleven days of the original order, the district court should have rejected Exxon Mobil's petition.

[¶ 16] Under W.R.A.P. 13.01(b) the district court had discretion to grant Exxon Mobil's Petition for Writ of Review. We review the district court's decision to grant the petition for abuse of discretion. An abuse of discretion analysis considers the "reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

[¶ 17] The district court's decision to consider the petition was reasonable. The issues were not simple discovery disputes but questions about the availability and scope of an appeal before the SBOE. We issued our decision in *Amoco Prod. Co. v. State Bd. of Equalization*, 12 P.3d 668 (Wyo.2000), while the discovery dispute continued. That decision addressed, to some extent, the role of the SBOE in administrative appeals and contributed to the issues raised by Exxon Mobil. Exxon Mobil timely filed its petition for writ of review with the district court. The October 2000 orders differed from the April 2000 order and were appropriate for review.

[¶ 18] Under the SBOE orders compelling discovery, Exxon Mobil produced some of the discovery material and designated a substantial amount of additional material for discovery. Sublette County claims that neither the district court nor this court should consider the present petition for review because the discovery issues are moot. An issue is moot, and not reviewable on appeal, when an event occurs which makes a determination of the issues unnecessary. *Davidson v. Sherman*, 848 P.2d 1341, 1348 (Wyo.1993). An exception to the principle exists "when the case presents a controversy capable of repetition yet evading review." *Id.* This exception applies here. Although some discovery occurred, the central issue about the scope of an administrative appeal by a county remains, is likely to arise in other cases, and would evade review if we determined that the case was moot. We determine that this case was properly before the district court (and is properly before us).

## III. *Non Discovery Issues.*

[¶ 19] The district court issued an order that reversed and vacated the SBOE's October 2000 discovery orders. It also ordered that the County's contested case was limited to "specific errors alleged to have been committed by the Department, not the taxpayer," and prohibited the SBOE from considering claims which would result in a separate audit of Exxon Mobil or would invade statutory functions of the DOR (such as selecting a valuation method). The County asserts that the district court lacked subject matter jurisdiction to address these additional matters because they were beyond the scope of the October 26, 2000 discovery order. The

County characterizes these additional orders as "merely advisory" and improper.

[¶ 20] The County's argument fails for two reasons. First, the writ of review granted by the district court related to the proper scope of discovery in the case before the SBOE. The district court was required to define the extent of a contested case brought by a county in order to determine the appropriate scope of discovery. The district court's rulings about the scope of the case were not advisory but were an inherent part of its decision on the scope of discovery.

[¶ 21] Second, the County's position incorrectly limits the scope of a reviewing court's authority on a writ of review. When a writ of review is granted, the reviewing court "*may* set forth the particular issue or point of law which will be considered." W.R.A.P. 13.07 (emphasis added). The reviewing court's review is not limited to only an issue defined by the respondent. Instead the reviewing court may "reverse, vacate, remand or *modify* the decision for errors appearing on the record." W.R.A.P. 13.08 (emphasis added). The reviewing court can review the entire record for abuse of discretion. *V–1 Oil Co. v. Ranck,* 767 P.2d 612, 616 (Wyo.1989). The district court properly reviewed the scope of the contested case.

## IV. *County's Authority to Appeal.*

[¶ 22] A county "has no sovereign power other than that granted by the legislature." *River Springs Ltd. Liability Co. v. Board of County Comm'rs of County of Teton,* 899 P.2d 1329, 1335 (Wyo.1995).

A county is a political subdivision of the state, created to aid in the administration of government.... As an arm of the state, the county has only those powers expressly granted by the constitution or statutory law or reasonably implied from powers granted.

*Dunnegan v. Laramie County Comm'rs,* 852 P.2d 1138, 1142 (Wyo.1993). No statute expressly grants counties in Wyoming the authority to file contested cases appealing ad valorem tax decisions. Several statutes allow the taxpayer or the DOR to appeal at various points in the ad valorem tax process, but none of the those statutes mention counties.

[¶ 23] Sublette County argues that Wyo. Stat. Ann. § 39–11–102.1(c) (Lexis 1999) implies the authority of a county to appeal ad valorem tax decisions to the SBOE. This statute states:

The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization and review final decisions of the department upon application of any interested person adversely affected, including boards of county commissioners for the purposes of this subsection, under the contested case procedures of the Wyoming Administrative Procedure Act.

On its face, this statute does not grant any authority to boards of county commissioners. It simply describes duties of the SBOE. The question here is whether the statutory obligation of the SBOE to review decisions on the application of boards of county commissioners impliedly empowers counties to bring those appeals.

[¶ 24] This court has often discussed statutory construction.

[W]e look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*Campbell County Sch. Dist. v. Catchpole,* 6 P.3d 1275, 1285 (Wyo.2000) (citations omitted).

[¶ 25] Wyo. Stat. Ann. § 39–11–102.1(c) (LexisNexis 2001) is subject to varying interpretations. It may mean that the SBOE

must hear appeals brought by counties if counties are expressly granted the authority to appeal elsewhere, or it may mean that counties have the authority to file contested case appeals. If it grants such authority to counties, it may mean that counties only may file contested cases on issues not specifically addressed in other statutes, or it may give counties authority to challenge issues which other statutes reserve for the DOR or the state (i.e., valuation method). This statute is ambiguous.

[¶ 26] The history of Wyo. Stat. Ann. § 30–11–102.1(c) (Lexis 2001) may be helpful in resolving the ambiguity. "Legisprudence (the jurisprudence of legislation)" is helpful in determining what the legislature intended. *Parker Land & Cattle Co. v. Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993). In 1977, Wyo. Stat. § 39–1–304(a) read:

> The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization, review state excise taxes and review their own assessments of property and tax determinations. In addition, the board shall: . . .

Wyo. Stat. Ann. § 39–1–304(a) (Michie Dec. 1977 Rpl.) (Repealed).

[¶ 27] Then, in 1991, Wyo. Stat. Ann. § 39–1–304(a) was amended to read:

> The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming constitution and shall hear appeals from county boards of equalization, review final decisions of the department on state excise taxes and review department assessments of property and tax determinations. In addition, the board shall: . . .

Wyo. Stat. Ann. § 39–1–304(a) (Michie July 1994 Rpl.) (Repealed).

[¶ 28] Next, in 1995, the statute was amended to read:

> The state board of equalization shall perform the duties specified in article 15, section 10 of the Wyoming Constitution and shall hear appeals from county boards of equalization and review final decisions of the department upon application of any

interested person adversely affected, including boards of county commissioners for the purposes of this subsection, under the contested case procedures of the Wyoming Administrative Procedure Act. . . . In addition, the board shall: . . .

Wyo. Stat. Ann. § 39–1–304(a) (Michie 1997) (Repealed).

[¶ 29] Then, in 1998, the Wyoming tax statutes were recodified and renumbered by 1998 Wyo. Sess. Laws ch. 5. The above quoted part of § 39–1–304(a) became Wyo. Stat. Ann. § 39–11–102.1(c), but the wording remained identical. Wyo. Stat. Ann. § 39–11–102.1(c) (Michie 1998 Supp.).

[¶ 30] A basic tenet of statutory construction is that changes in statutes have meaning and that the legislature intended something when it changed a statute. *State Bd. of Equalization v. Cheyenne Newspapers, Inc.,* 611 P.2d 805, 809 (Wyo.1980). Statutory construction should give meaning to every portion and not render any part meaningless or superfluous. *Id.* at 809. We conclude that by amending Wyo. Stat. Ann. § 39–11–102.1(c) in 1995, the legislature intended to grant counties the authority to file contested cases from final decisions of the DOR. Unfortunately, the legislature left intact several statutes which specify only the taxpayer and the Department as having rights to appeal. It did not indicate what decisions could be challenged by the county, or when. It failed to indicate how county appeals fit into the amended return and audit process. By granting counties the right to appeal, the legislature may have effectively eliminated any possibility of settlement of tax disputes under Wyo. Stat. Ann. § 39–11–103(b) (LexisNexis 2001) because, even if a dispute is settled, there is the risk of an appeal by a county. We urge the legislature to remedy these problems by clearly indicating its intent with respect to county appeals of ad valorem taxes and by clearly defining the scope and process for such appeals.

## V. *Scope of Appeal Authority.*

[¶ 31] Wyo. Stat. Ann. § 39–11–102(c) (LexisNexis 2001) is vague and ambiguous in that it fails to define the scope of a

county's authority to appeal. Does it give a county authority to challenge valuation methods? Other statutes clearly give responsibility for valuation methodology to the DOR and taxpayer. Does this statute permit a county to audit a taxpayer? Can such an audit occur before the time to file amended returns expires or before the Department of Audit has completed its work?

[¶ 32] "Courts may try to determine legislative intent by considering the type of statute being interpreted." *Basin Elec. Power Coop. v. Bowen,* 979 P.2d 503, 509 (Wyo.1999). "Tax statutes are to be construed in favor of the taxpayer and are not to be extended absent clear intent of the legislature." *Id.* (citing *Chevron, U.S.A., Inc. v. State,* 918 P.2d 980, 985 (Wyo.1996)).

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen.

*Chevron, U.S.A., Inc. v. State,* 918 P.2d 980, 984–85 (Wyo.1996) (citing *Kelsey v. Taft,* 72 Wyo. 210, 219–20, 263 P.2d 135, 138 (1953) (quoting *Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917))). The same principles of strict construction apply to statutes which grant authority to political subentities. "Since enabling legislation, through which all subordinate governmental instrumentalities must receive their authority, is a grant of sovereign power, it is subject to the usual rule of strict construction applicable to such grants." Norman J. Singer, *Statutes and Statutory Construction* § 64:1 (6th ed.2001 rev.) (footnote omitted). Because § 39–11–102.1(c) (LexisNexis 2001) is both a tax statute and one we are being asked to construe as a delegation of power from the State of Wyoming to the counties, we hold that it is appropriate to strictly construe it.

[¶ 33] Assuming that the legislature intended to give some degree of authority to counties to appeal in ad valorem tax cases, principles of strict construction require us to conclude that it did not intend the scope of such an appeal to extend into areas specifically addressed in other statutes. Specific statutes control over general statutes involving the same subject. *Thunderbasin Land, Livestock & Inv. Co. v. Laramie County,* 5 P.3d 774, 782 (Wyo.2000). Consequently, a county's appeal may not challenge valuation methodology. Such appeals are governed by Wyo. Stat. Ann. § 39–14–203(b) (LexisNexis 2001). Such an appeal may not challenge an annual value certification, as that matter is addressed by Wyo. Stat. Ann. §§ 39–13–102(n) and 39–14–209(b)(iv) (LexisNexis 2001). The County cannot force an audit of a taxpayer through a contested case, as that responsibility is given to the Departments of Audit and Revenue under Wyo. Stat. Ann. § 39–14–208(b) (LexisNexis 2001). It follows that the County's appeal must be limited in scope to specific errors allegedly committed by the DOR. Such a limited scope is exactly what the district court prescribed in its order on Writ of Review.

## VI. *Final Decision.*

[¶ 34] Wyo. Stat. Ann. § 39–11–102.1(c) (LexisNexis 2001) states that the SBOE shall review *final decisions.* Here, Sublette County petitioned for review of a value certification. The decision of the DOR in making that value certification is anything but final. The taxpayer still can file an amended return. An audit can occur, and the value or tax can be adjusted over an eight-year period.

[¶ 35] In *Amoco Production Co. v. State Bd. of Equalization,* 7 P.3d 900 (Wyo. 2000), we held that a letter sent to a taxpayer after an audit constituted a final decision. At that point in time the DOR could do nothing more, and a final decision existed. That is the essential definition of a final administrative decision. It is "one ending the proceedings, leaving nothing further to be accomplished." *MGTC, Inc. v. Public Serv. Comm'n,* 735 P.2d 103, 106 (Wyo.1987).

[¶ 36] The annual value certification for ad valorem tax is not a final decision. Much remains to be accomplished in the tax process at that time. It is only after the time for an audit has expired, or an audit is com-

plete, and the DOR has assessed on the basis of the audit (Wyo.Stat.Ann. § 39–14–208(b)(v)(E)) that there is nothing more to be accomplished. Only then has the DOR made a final decision that a county may appeal. Appeals by a county before that point are exercises in futility.[1] The contested case brought by Sublette County does not seek review of a final order. The district court's order must be modified to require dismissal of the contested case.

## CONCLUSION

 [¶ 37] The legislature apparently intended that counties have some right to appeal ad valorem tax assessments but failed to specify how or when such an appeal is available. Without other legislative direction, we conclude that such appeal rights under Wyo. Stat. Ann. § 39–11–102.1(c) (LexisNexis 2001) do not supercede specific statutes providing for review of various steps in the ad valorem taxation process, nor do they permit counties to usurp functions of other state agencies.

[¶ 38] The contested case here does not seek review of a final order. Consequently, we affirm the district court to the extent of its order and remand the case to the district court to require dismissal.

---

1. We note that by statute either the DOR or taxpayer may seek review at earlier stages in the taxation process.