# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 15

### OCTOBER TERM, A.D. 2012

### *February 6, 2013*

| | |
|---|---|
| **IN THE INTEREST OF RB,** | |
| **STATE OF WYOMING, by and through the office of the PARK COUNTY ATTORNEY,** | |
| **Appellant (Objector),** | |
| **v.** | |
| **WYOMING STATE HOSPITAL,** | **S-12-0141** |
| **Appellee (Petitioner),** | |
| **and** | |
| **RB,** | |
| **Appellee (Respondent).** | |

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
    William K. Struemke, Deputy Park County Attorney, Park County Attorney's Office, Cody, Wyoming

*Representing Appellee Wyoming State Hospital:*
    Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General

*Representing Appellee RB:*

No appearance.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    The Fifth Judicial District Court involuntarily hospitalized RB, a middle-aged man, at the Wyoming State Hospital after a period of emergency detention at West Park Hospital in Cody, Wyoming.  He was detoxified of opiates and other controlled substances and eventually stabilized on psychotropic medications.  The State Hospital gave notice that it intended to discharge RB, and the Park County Attorney's Office filed an objection with the district court, claiming a right to a hearing on the merits of the State Hospital's decision.  The district court found that Park County had no statutory right to object to RB's discharge, and therefore had no standing to do so.  We find that the involuntary hospitalization statutes do not provide authority for a county attorney to object to the proposed discharge of a patient from involuntary civil commitment, and we therefore affirm.

## I. ISSUE

[¶2]    Does a county attorney[1] have authority to object to a patient's discharge from involuntary civil commitment under Chapter 10 of Title 25 of the Wyoming Statutes?

## II. FACTS

[¶3]    In late November of 2011, a mental health examiner filed an application to involuntarily hospitalize RB in the Fifth Judicial District Court for Park County.  The application stated that RB was being emergently detained as a suicide risk pending a hearing on whether he should be involuntarily hospitalized at the Wyoming State Hospital.  The district court appointed counsel for RB and set a hearing on both involuntary hospitalization and continued emergency detention.  A deputy Park County attorney appeared on behalf of the State at that hearing, which took place before a court commissioner.  The commissioner made findings of facts and recommended that RB be hospitalized at the State Hospital in Evanston, Wyoming.  The district court adopted the commissioner's recommendations and entered an appropriate order.

[¶4]    RB had a history of opiate dependence and opiate-induced depression beginning in 2000.  The record suggests that RB had an injury or illness which was treated with opiates.  This evidently led to addiction and subsequent drug-seeking behavior involving efforts to persuade health care providers that his condition required treatment with the substances to which he was addicted.  Dr. Robert Hartmann, RB's treating psychiatrist at the State Hospital, found that other health care providers had in fact inappropriately

---

[1] The statute involved in this case refers to both county and district attorneys.  Wyo. Stat. Ann. § 25-10-116(b) (LexisNexis 2011).  For the sake of simplicity, we will refer only to county attorneys in this decision.

1

prescribed opiates and other controlled substances in 2011, resulting in depression and suicidal ideation which led to RB's involuntary hospitalization.

[¶5]    After RB was detoxified and stabilized on psychotropic medications to address mental illness, the State Hospital gave notice to the district court, RB's attorney, a community health center, and the Park County Attorney that conditions justifying involuntary hospitalization no longer existed, and that it therefore intended to discharge him in about eight days.  Although it was not expressly stated in the notice, the conclusion that hospitalization was no longer justified implied a finding that RB was no longer a danger to himself or others as he had been when involuntarily hospitalized.

[¶6]    The Park County Attorney filed an objection to the State Hospital's medical determination, asserting that the district court should order RB's continued hospitalization because he had several prior emergency detentions and involuntary hospitalizations.  Park County is obligated to pay for the first seventy-two hours of emergency detention, and believes that it should not be required to incur the expense of doing so repeatedly without an opportunity to demonstrate that the patient should not be discharged.  *See* Wyo. Stat. Ann. § 25-10-112(a)(i)(A) (LexisNexis 2011).  It appears from the record that Park County's interest in objecting to RB's discharge was largely if not entirely financial.

[¶7]    The State Hospital then submitted a discharge plan which reiterated that RB had stabilized and that he was fully capable of managing his own affairs.  The court set a hearing in which RB, his treating psychiatrist Dr. Hartmann, and the Wyoming Attorney General's Office participated by telephone.

[¶8]    Dr. Hartmann, who was called by the Attorney General's Office, was the only witness at the hearing.  He testified that RB was almost completely detoxified when he arrived at the State Hospital on December 6, 2011, and that he was therefore essentially physically and mentally normal at that time.  RB gave Dr. Hartmann a history of opiate dependence, including a relapse in late September of 2011.  Instead of being detoxified and released from other health care facilities after his relapse, he was unfortunately given even larger doses of opiates and benzodiazepines by those care providers, and as a result became suicidal.

[¶9]    Dr. Hartmann testified that RB indicated that he had never attempted suicide, and that he always sought help when he was in trouble.  He concluded that RB's current problems were caused by medications supplied by professional healthcare providers.  RB was a cooperative patient, although he did engage in drug-seeking behavior consistent with his addiction.  Dr. Hartmann concluded that continued involuntary hospitalization at the State Hospital was inappropriate because the patient had been detoxified and was no longer suicidal.  He testified that the State Hospital does not treat substance abuse

2

problems, including addiction to opiates, and therefore had nothing to offer RB in that respect.

[¶10] In cross-examination, the deputy county attorney sought to establish that persons at risk for suicide may not be forthright about prior suicide attempts. Dr. Hartmann admitted that he had not seen all of RB's medical and psychological records or interviewed his family. He reiterated his conclusion that RB spoke of committing suicide only when intoxicated with opiates.

[¶11] Although it conducted the hearing described above, the trial court found that the statute governing discharge from involuntary hospitalization did not allow a county attorney to object to the State Hospital's decision to discharge an involuntarily hospitalized patient, or to obtain an evidentiary hearing concerning that decision. The evidence just described was not therefore significant to its ruling. This appeal was timely perfected.

[¶12] RB did not participate in this appeal. In criminal cases, a county attorney or district attorney represents the State of Wyoming. *See* Wyo. Stat. Ann. §§ 9-1-801, 804 (LexisNexis 2011) (delineating the judicial districts in which the district attorney prosecutes criminal cases on behalf of the State, as opposed to the county attorney); Wyo. Stat. Ann. § 18-3-301 (LexisNexis 2011) ("In judicial districts in which the office of district attorney has not been created there shall be elected in each county a county and prosecuting attorney . . . ."). In this case, however, it is clear that the Park County Attorney represents the interests of Park County. We will therefore refer to those interests as those of the county attorney or Park County rather than of the State. The State Hospital is, of course, a sub-agency of the State of Wyoming.

### III. STANDARD OF REVIEW

[¶13] The district court framed its decision in terms of standing, and the parties also identified standing as an issue in their briefs. The concept of standing limits a private citizen or organization's right to challenge the actions of government in the courts to those cases in which the challenger presents a justiciable controversy, among other things. *See, e.g., Miller v. Wyoming Dep't of Health,* 2012 WY 65, ¶ 17, 275 P.3d 1257, 1261 (Wyo. 2012).

[¶14] As a political subdivision of the State, a county has no powers other than those granted by Wyoming's constitution or its statutes, as well as those powers which can reasonably be implied from expressly granted powers. *Bd. of Cnty. Comm'rs for Sublette Cnty. v. Exxon Mobil Corp,* 2002 WY 151, ¶ 22, 55 P.3d 714, 721 (Wyo. 2002) (citing *River Springs Ltd. Liability Co. v. Bd. of Cnty. Comm'rs of Cnty. of Teton,* 899 P.2d 1329, 1335 (Wyo. 1995); *Dunnegan v. Laramie Cnty. Comm'rs,* 852 P.2d 1138, 1142 (Wyo. 1993)).

[¶15]   The parties agree that the ability of Park County to challenge a discharge from the State Hospital and to obtain an evidentiary hearing on the propriety of that discharge depends on whether or not it has statutory authority to do so.  It is more fitting to speak of the authority granted to counties under the involuntary hospitalization statutes than to frame the issue as one of standing.  It is appropriate for this Court to review controversies like this in which a political subdivision and a State agency seek a construction of applicable statutes and a determination of their correlative rights.  *Carbon Cnty. Sch. Dist. No. 2 v. Wyo. State Hosp.*, 680 P.2d 773, 775 (Wyo. 1984).

[¶16]   District court decisions interpreting statutes involve questions of law, requiring *de novo* review by this Court. *Exxon Mobil Corp.*, ¶ 7, 55 P.3d at 718 (citing *Sellers v. Dooley Oil Transp.*, 2001 WY 44, ¶ 10, 22 P.3d 307, 309 (Wyo. 2001)).  The basic rules of statutory construction are well established:

> We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.
>
> When the court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction. If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent.

*Basin Elec. Power Co-op. v. Bowen*, 979 P.2d 503, 506 (Wyo. 1999) (internal quotation marks omitted) (ellipsis omitted).

[¶17]   "[L]egislative intent, manifested in the plain language of the statutes, is the controlling consideration" in our interpretation of them. *In re Osenbaugh*, 10 P.3d 544, 550 (Wyo. 2000).  This intent is the "vital part, and the essence of the law." *Rasmussen v. Baker*, 7 Wyo. 117, 128, 50 P. 819, 821 (1897).  In keeping with the legislature's intent, we endeavor to give statutes a "reasonable, practical construction." *KP v. State*, 2004 WY 165, ¶ 22, 102 P.3d 217, 224 (Wyo. 2004) (quoting *Story v. State*, 755 P.2d 228, 231 (Wyo. 1988)).  We do not construe statutes "in a manner producing absurd results." *Id.*  Put another way, "[w]hen a statute is as clear as a glass slipper and fits without strain, courts should not approve an interpretation that requires a shoehorn." *Demko v. United States*, 216 F.3d 1049, 1053 (Fed. Cir. 2000).

4

[¶18]  We do not construe statutes in a way that renders any part of them meaningless. *Osenbaugh*, 10 P.3d at 550; *see State ex rel. Wyo. Dep't of Revenue v. Hanover Compression, LP*, 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo. 2008) ("Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation." (quoting *BP Am. Prod. Co. v. Wyo. Dep't of Revenue*, 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo. 2005))).  We will not "extend a statute to matters that do not fall within its express provisions," *Hanover Compression*, ¶ 8, 196 P.3d at 784 (quoting *BP Am. Prod. Co.*, ¶ 15, 112 P.3d at 604), nor "expand the plain language of a statute to encompass requirements beyond those clearly set out by the legislature." *Miller v. Bradley*, 4 P.3d 882, 888 (Wyo. 2000), *abrogated on other grounds by In re Crago,* 2007 WY 158, 168 P.3d 845 (Wyo. 2007).  As part of our analysis, we construe all statutes relating to the same subject matter together:

> All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. . . . We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*.

*Hanover Compression*, ¶ 8, 196 P.3d at 784 (quoting *BP Am. Prod. Co.*, ¶ 15, 112 P.3d at 604).

## IV. DISCUSSION

A.  Background – Involuntary Hospitalization Proceedings in Wyoming

[¶19]  Title 25, Chapter 10 of the Wyoming Statutes governs the involuntary hospitalization of mentally ill persons who pose a danger to themselves or others.  *See* Wyo. Stat. Ann. §§ 25-10-101–127 (LexisNexis 2011).  The State exercises its *parens patraie* powers under Title 25 to care for those who cannot care for themselves. Robert B. Keiter, *A Constitutional Analysis of Involuntary Civil Commitment in Wyoming*, 15 Land & Water L. Rev. 141, 151–52 (1980).  The involuntary hospitalization (also referred to as civil commitment) statutes provide a judicial process to protect both the mentally ill and the communities in which they reside.  *See Addington v. Texas*, 441 U.S. 418, 426, 99 S. Ct. 1804, 1809, 60 L. Ed. 2d 323 (1979) ("The state has a legitimate interest under its *parens patriae*  powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."); *Moore v. Wyo. Med. Ctr.*, 825 F. Supp. 1531, 1538–39 (D. Wyo. 1993) (describing how Wyoming's emergency detention statute "constitutes a reasonable attempt by the state legislature to balance the interests of the mentally ill individual against the interests

5

of the state"). We have previously described our civil commitment statutes as "well-intentioned," and "meant to protect people who are thought to be mentally ill." *Holm v. State*, 404 P.2d 740, 741 (Wyo. 1965).

[¶20] There are limits to the State's power to impose involuntary hospitalization on a citizen. The Wyoming and Federal Constitutions both provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. 5; Wyo. Const. art. 1, § 6. Civil commitment is a significant deprivation of an individual's liberty. *Reiter v. State*, 2001 WY 116, ¶ 19, 36 P.3d 586, 592 (Wyo. 2001) (quoting *Jones v. United States*, 463 U.S. 354, 361, 103 S. Ct. 3043, 3048, 77 L. Ed. 2d 694 (1983)). It involves both a loss of freedom and the possibility of adverse social consequences. *Vitek v. Jones*, 445 U.S. 480, 492, 100 S. Ct. 1254, 1263, 63 L. Ed. 2d 552 (1980) (citation omitted). Due process therefore requires the State to have a constitutionally adequate purpose for the confinement. *Reiter*, ¶ 19, 36 P.3d at 592 (quoting *Jones*, 463 U.S. at 361, 103 S. Ct. at 3048).

[¶21] The general purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness." *Jones*, 463 U.S. at 368, 103 S. Ct. at 3052. Wyoming's civil commitment statues require a showing of mental illness to justify involuntary hospitalization.[2] An individual must be shown to be a present danger to himself or others and to require treatment. *See* § 25-10-101(a)(ix) (defining mental illness). The head of a hospital or other medical professionals make this determination. *See id.* at (a)(iv)–(v) (defining "examiner" and "head of hospital"); § 25-10-103 ("Subject to the rules and regulations of the hospital, the head of a hospital may admit persons who have symptoms of mental illness pursuant to W.S. 25-10-106, 25-10-109 or 25-10-110.").

[¶22] Due process also limits the duration of involuntary hospitalization--it must bear "some reasonable relation" to the purpose of the commitment. *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858, 32 L. Ed. 2d 435 (1972)). Once a patient "has recovered his sanity or is no longer dangerous," he is entitled to release. *Jones*, 463 U.S. at 368, 103 S. Ct. at 3052 (citation omitted).

B. Involuntary Hospitalization Procedure and Examinations

---

[2] Keiter, *supra*, at 152 ("The [civil commitment] statutes almost uniformly require a showing of mental illness . . . ."); *see, e.g.*, Wyo. Stat. Ann. § 25-10-106 (allowing the head of the hospital to admit a person with symptoms of mental illness upon a voluntary application for admission); § 25-10-109 (providing a process for emergency and continued detention of mentally ill persons); § 25-10-110 (allowing involuntary hospitalization of mentally ill persons). *See also* § 25-10-114 (giving the Department of Corrections authority to transfer mentally ill inmates to the State Hospital if correctional facilities cannot provide adequate treatment).

[¶23] It is worth reviewing the process by which involuntary hospitalization begins and proceeds before discussing its termination by discharge from the State Hospital. A law enforcement officer or examiner (generally a mental health professional) who believes that a patient is mentally ill--meaning that he is a danger to himself or others and needs treatment--may initiate emergency detention in a local hospital or other suitable facility. § 25-10-109(a); § 25-10-101(a)(iv), (ix). An examiner is required to conduct a preliminary examination of the patient within twenty-four hours of the initial detention. § 25-10-109(b). If the examiner determines that the patient is mentally ill, he may be detained a maximum of seventy-two hours, during which time a hearing must be held to determine whether or not detention should continue pending proceedings for involuntary hospitalization. *Id.* at (h). An attorney must be appointed to represent the patient. *Id.*

[¶24] Proceedings for involuntary hospitalization are commenced by the filing of a written application with the district court. § 25-10-110(a). The court must expedite the proceedings, and the county attorney appears in the public interest. *Id.* at (c). An additional examination is required, after which a hearing is to be set within five days if the examination indicates that the patient is mentally ill and in need of involuntary hospitalization. *Id.* at (e)–(f). If the patient is found by clear and convincing evidence to be mentally ill, the district court may order treatment at the "least restrictive and most therapeutic" alternative, which may be the State Hospital. *Id.* at (j), (h).

[¶25] As can be seen from this brief summary, the involuntary hospitalization statutes require the county attorney to participate in civil commitment proceedings, at least to the point at which the patient is actually hospitalized. After the patient is hospitalized, Wyoming Statute § 25-10-116(a)[3] requires the head of the hospital or his designee to

---

[3] This section, titled "Periodic examinations of patients; determination of discharge or continued hospitalization; notice; hearing," provides as follows:

> (a) Three (3) months after each patient's admission to the hospital, the head of the hospital shall evaluate the progress of each patient and shall reevaluate the treatment and progress every six (6) months thereafter.

> (b) When the head of a hospital determines after the examination required by subsection (a) of this section or by W.S. 25-10-113 that the conditions justifying hospitalization of involuntary patients no longer exist, he shall report his determination to the court, the county attorney, the district attorney, family members and the mental health center which were involved in the initial proceedings. Unless, within three (3) days after the notice is sent, the court upon motion orders a hearing on continuing the patient's hospitalization, the head of the hospital shall discharge the patient. The hearing shall be held as soon as practicable and shall follow the procedures in W.S. 25-10-118. Notice of the hearing shall conform with W.S. 25-10-116(c).

conduct periodic examinations of patients. *Id.*; § 25-10-101(a)(v). *See also* § 25-10-113 (requiring preliminary examinations of newly-admitted patients). This case followed the usual pattern of civil commitment proceedings in Wyoming. However, it presents a question as to whether, having acted in the public interest to obtain an order of involuntary hospitalization, the county attorney has the right to: (1) object to a proposed discharge by the State Hospital; (2) compel an evidentiary hearing; and (3) obtain a court order requiring the hospital to continue hospitalization after it has determined that the patient should be discharged.

C. Right to Objection to Proposed Discharge Decisions

[¶26] Park County asserts that it has statutory authority to object to a proposed discharge because Wyoming Statute § 25-10-116(b) requires the State Hospital to give county attorneys notice of a proposed discharge. That subsection provides as follows:

> (b) When the head of a hospital determines after the examination required by subsection (a) of this section or by W.S. 25-10-113 that the conditions justifying hospitalization of involuntary patients no longer exist, he shall report his determination to the court, the county attorney, the district attorney, family members and the mental health center which were involved in the initial proceedings. Unless, within three (3) days after the notice is sent, the court upon motion orders a hearing on continuing the patient's hospitalization, the head of the hospital shall discharge the patient. The hearing shall be held as soon as practicable and shall follow the procedures in W.S. 25-10-118. Notice of the hearing shall conform with W.S. 25-10-116(c).

---

> (c) When the head of a hospital determines after an evaluation required by subsection (a) of this section or by W.S. 25-10-113 that the conditions justifying hospitalization continue to exist, he shall send to the court notice of his determination and a detailed statement of the factual basis for the determination. The court may order a hearing to review the determination. The head of the hospital shall also send notice of his determination to the patient and the person responsible for his care or custody. The notice shall include:
>
>> (i) The patient's right to contest the determination;
>> (ii) The patient's right to a hearing; and
>> (iii) The patient's right to counsel.

§ 25-10-116.

§ 25-10-116(b). The foregoing provision contemplates that a hearing may be held after notice of intent to discharge is given. The question then becomes "who has a statutory right to the hearing?" Although we find the involuntary hospitalization statutes ambiguous in some respects, we believe they are clear on the issue of the statutory authority of a county attorney to object to and prevent discharge.

[¶27] Section 116(b) provides that notice of a discharge hearing shall be governed by Section 116(c), which in turn governs the notice required when the hospital determines that continuing hospitalization is required. Section 116(c) provides that notice of a hearing on continuing hospitalization (or discharge) is sent *only* to the patient and the person responsible for his care or custody. *Id.* at (b)–(c). The notice includes: (1) the patient's right to contest the determination; (2) the patient's right to a hearing; and (3) the patient's right to counsel. *Id.* at (c). Section 116(b) also refers to Section 118, which requires that:

> (a) A hearing shall be conducted in accordance with this section **when a patient contests one (1) of the following actions:**
>
> > (i) Transfer pursuant to W.S. 25-10-114 or 25-10-115;
> >
> > (ii) Continuing hospitalization pursuant to W.S. 25-10-116; or
> >
> > (iii) Repealed by Laws 1989, ch. 147, § 2.
> >
> > (iv) (iv) Revocation of convalescent status release pursuant to W.S. 25-10-127.
>
> (b) Unless otherwise provided, an objection shall be filed with the court within five (5) days of receipt of notice of the intended action. The court shall set a hearing date which shall be within fourteen (14) days of receipt of the objection. If an objection is not filed within five (5) days, **or if the patient consents to the action, the court may enter an ex parte order authorizing the action.**
>
> (c) The hearing shall be before the court, without a jury. If the court finds by clear and convincing evidence that:
>
> > (i) The transfer or continuing hospitalization is justified, the court shall enter an order

9

authorizing the transfer or continuing hospitalization; or

> (ii) The transfer or continuing hospitalization is not justified, the court shall enter an order prohibiting the transfer or continuing hospitalization.

§ 25-10-118 (emphasis added).

[¶28] We must read these statutes *in pari materia*, as they are part of a statutory scheme, and in this case, because they refer to each other. *See Hanover Compression*, ¶ 8, 196 P.3d at 784 (quoting *BP Am. Prod. Co.*, ¶ 15, 112 P.3d at 604) (explaining how we read statutes relating to the same subject matter *in pari materia*). We review statutes in context, and attempt to harmonize statutory provisions with other provisions relating to the same subject matter. *State of Wyo. Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 23, 177 P.3d 793, 799 (Wyo. 2008). If given a choice between reading a statute as to render part of it meaningless, or of harmonizing related statutory provisions to give effect to all of the statutory provisions, we choose the latter. *See Hanover Compression*, ¶ 8, 196 P.3d at 784 (explaining why we do not interpret statutes to render them meaningless if the statutes are "susceptible of another interpretation" (quoting *BP Am. Prod. Co.*, ¶ 15, 112 P.3d at 604)).

[¶29] Reading these statutes *in pari materia*, as we are required to do, we are compelled to conclude that only the patient may object to a proposed discharge under Section 116. The statutes can hardly be read otherwise, as they consistently refer to the *patient's* consent, the *patient's* right to contest actions taken, and the *patient's* right to counsel. It is especially telling that the notice provided to the patient under Section 116(c) includes notice of the patient's right to contest a determination and to a hearing. *See* § 25-10-116(c). Although one would be inclined to assume that a patient would normally be in favor of discharge, counsel for the State Hospital indicated at oral argument that patients who feel they need more treatment do indeed object to discharge occasionally, which seems a plausible reason for the legislature to have chosen the language it did.

[¶30] Park County asserts that the requirement of notice in Section 116(b) implies a right for county attorneys to object to a proposed discharge. It further asserts that any of the other listed persons or entities may also object to a proposed discharge under Section 116(b), obtain a hearing, and perhaps persuade the court to order continued hospitalization of the patient despite the State Hospital's determination. Why else, it asks, would the statute require notice?

[¶31] To allow the county attorney, community mental health center, and family members to delay a discharge by requiring a hearing on the State Hospital's decision

10

would make little sense in light of the statutory scheme. It is true that these persons or entities may be essential to identifying individuals who are a danger to themselves or others, initiating emergency detention, and pursuing involuntary hospitalization. They must perform these functions at the local level because of the very nature of the process designed by the legislature. Local law enforcement officers and mental health care providers are in the best position to identify individuals requiring involuntary hospitalization. Local district judges are well-situated to provide due process, and local county attorneys who routinely practice before those judges are a logical choice to represent the public interest in securing involuntary hospitalization.

[¶32] However, after involuntary hospitalization has been ordered, these same persons or entities, with the possible exception of family members, are unlikely to have meaningful contact with a patient or access to his treatment records, particularly when hospitalization is at the Wyoming State Hospital. They generally receive no detailed information regarding the current state of the patient's mental health, and thus have little or no information to provide a legitimate medical basis upon which to object to discharge, at least without some process to obtain the necessary information.

[¶33] On the other hand, patients involuntarily hospitalized at the State Hospital are cared for by mental health professionals who specialize in the treatment of mental illness, including assessment of the threat a patient poses to himself and others. As the psychiatrist here believed to be the case, a threat that the patient may harm himself can be the result of substance abuse or the failure to take psychotropic medications, and that threat may disappear when these problems are addressed. The State Hospital's decision that an individual is no longer dangerous to himself or others is a medical determination. *See* § 25-10-116(b) (requiring the discharge of involuntarily committed patients "[w]hen the head of a hospital determines . . . that the conditions justifying hospitalization of involuntary patients no longer exist . . . ."; § 25-10-101(a)(v) ("When this act requires or authorizes the head of a hospital to perform an act which involves the practice of medicine, the act shall be performed by a physician . . . ."). The legislature delegated the responsibility for such decisions to the head of a hospital or other attending physicians, and we have no choice but to abide by the plain language of the statute "viewed in light of its object and purpose." *See Terex Corp. v. Hough*, 2002 WY 112, ¶ 9, 50 P.3d 317, 321 (Wyo. 2002) ("Wyoming law requires that legislative intent be ascertained, as nearly as possible, from the language of the statute viewed in the light of its object and purpose." (quoting *Streeter v. Amerequip Corp.*, 968 F. Supp. 624, 629 (D. Wyo. 1997))).

[¶34] We have consistently held that the legislature is presumed to enact statutes with full knowledge of the law:

> All statutes are presumed to be enacted by the legislature with full knowledge of the existing state of law with reference thereto and statutes are therefore to be construed in harmony

with the existing law, and as a part of an overall and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to the decisions of the courts.

*Hall v. Park County*, 2010 WY 124, ¶ 19, 238 P.3d 580, 586 (Wyo. 2010) (quoting *Hannifan v. American Nat'l Bank of Cheyenne*, 2008 WY 65, ¶ 7, 185 P.3d 679, 683 (Wyo. 2008)).

[¶35]  We must therefore credit the legislature with knowledge that an involuntarily hospitalized patient has a right to be released when he is no longer a danger to himself or others. *See Jones*, 463 U.S. at 368, 103 S. Ct. at 3052 (describing when, as a matter of due process, a patient has a right to release from commitment); *see also Kansas v. Hendricks*, 521 U.S. 346, 359, 117 S. Ct. 2072, 2081, 138 L. Ed. 2d 501 (1997) ("[W]e have traditionally left to legislators the task of defining terms of a medical nature that have legal significance [in civil commitment statutes].") (citing Jones, 463 U.S. at 365 n.13, 103 S.Ct. at 3050 n.13).

[¶36]  The hearing conducted in this case provides a good illustration of why the remedy sought by Park County was not what the Wyoming Legislature intended.  The county attorney called no expert witness to contradict the State Hospital psychiatrist's expert opinion that RB no longer posed a threat to himself or others after detoxifying and being established on a psychotropic medication regimen.  Cross-examination established only that he had suffered from similar problems in the past, and that perhaps the psychiatrist had not seen all of the existing prior treatment records.  Dr. Hartmann found none of this information significant to his determination that RB had ceased to be a danger to himself or others.

[¶37]  RB may in fact suffer from periods of mental illness requiring emergency detention or involuntary hospitalization in the future, as the county attorney claims.  Nonetheless, there is no legal basis for continuing involuntary hospitalization based only on a possibility that a patient who is not currently mentally ill as that term is defined by statute will in the future become ill again based on his past behavior.  If further episodes occur, the patient's liberty may be restrained through involuntary hospitalization only upon proof of mental illness by clear and convincing evidence, not on the basis of speculation or possibilities.  *See* Keiter, *supra*, at 170 n.182 ("The objectives of the Wyoming State Hospital are to . . . return treated and rehabilitated patients to society at the earliest practicable date." (quoting 1978 Report from the Wyoming State Hospital, at *1 n.38, *in* 1978 Annual Report of the Board of Charities and Reform 30 (1978))).

[¶38]  In the words of our own Justice Potter, "[c]ourts are not at liberty to depart from that meaning [of a statute] which is plainly declared." *Rasmussen*, 7 Wyo. at 128, 50 P. at

821. The statutes here do not contain direct language to the effect that a county attorney may object to discharge on behalf of the State, and the legislature could easily have included that language if that had been its intent. It has done so in other statutes.

[¶39] For example, if the State Hospital decides that a person previously found not guilty of a crime because of mental illness or deficiency is no longer affected by mental illness or deficiency, or that he no longer presents a substantial risk of danger to himself and others, the applicable statute requires application to the district court for an order to allow him to be released. Wyo. Stat. Ann. § 7-11-306(e) (LexisNexis 2011). It mandates that the court hold a hearing on the application as soon as possible, clearly recognizes the State's right to object to release, and allocates to it the burden of proving by a preponderance of the evidence that the State Hospital's conclusion is incorrect. *Id.* The interests implicated by an involuntary civil commitment and a finding of not guilty by reason of mental illness are obviously quite different, and we must presume that the legislature chose not to create an explicit right to a hearing in Section 116(b) in recognition of those differences.

[¶40] On the other hand, the Wyoming Legislature might reasonably have concluded that a patient's family, the mental health center involved in his emergency detention and involuntary hospitalization, and the county attorney could benefit from notice of discharge. Notice may enable the patient's family members and the local mental health center to secure housing, to schedule counseling, and to arrange for medication management. The county attorney may also benefit from notice for a variety of reasons-- he or she may have withheld criminal charges that will be pursued when the patient is released, may see fit to notify victims in past criminal cases, or may distrust the State Hospital's conclusions and notify local law enforcement to be aware that in the county attorney's opinion the patient may pose a threat to the community despite the State Hospital's conclusions.

[¶41] Park County also argues that it is entitled to object to discharge from involuntary hospitalization because county attorneys represent the interests of the public in initial proceedings for involuntary hospitalization under Section 25-10-110(c). That subsection reads as follows:

> Proceedings under this section shall be entitled "In the Interest of . . . .". The county attorney of the county where the application is filed shall appear in the public interest. The court shall expedite the proceedings.

§ 25-10-110(c). Park County contends that this statute imposes a duty to ensure that a patient's discharge is in the public interest.

13

[¶42] The statute does not provide the breadth of authority claimed by Park County. The introductory phrase "[p]roceedings under this section" limits the county attorney's duty to appear in the public interest to proceedings to initiate involuntary hospitalization. Those procedures are defined by § 25-10-110. The provisions pertaining to discharge from involuntary hospitalization are contained in a separate section, § 25-10-116. As already noted, if the legislature had intended to authorize county attorneys to represent the public interest at all phases of the process, it could and would have done so, for reasons already discussed.

[¶43] In essence, Park County argues that the legislature intended for county attorneys to provide a check against erroneous discharge decisions by the State Hospital. The Court does not minimize the important role county attorneys play in obtaining orders of involuntary hospitalization. However, the legislature created and funded a state institution staffed with professionals specializing in the care of the involuntarily hospitalized, and in the assessment of the danger they pose to themselves and others as they are treated for mental illness. It is difficult to conceive of a reason that the legislature, having created this specialized institution, would choose to empower often-overworked local county attorneys without staffs qualified to evaluate mental illness to assess and challenge a discharge decision made by the specialists employed by that institution.[4]

## V. CONCLUSION

[¶44] Park County's frustration with a system in which counties are required to pay for repeated emergency detention for certain patients is understandable. Many who suffer from mental illness or addiction never completely vanquish the demons controlling their lives, but instead manage only to hold them at bay for what may be discouragingly brief periods of time. Some therefore require episodic care at considerable expense to both the State and the counties.

[¶45] However, the plain language of Wyoming Statute § 25-10-116(b) does not give Wyoming county attorneys the authority to object to a patient's discharge from involuntary civil commitment or to obtain review of the State Hospital's decision to release a patient from involuntary hospitalization. Their statutory authority is limited to

---

[4] Park County also points out that Department of Health regulations allow county attorneys to object to convalescent leave under Title 25. Dep't of Health, State Hospital, *Rules & Regs. For Convalescent Leave From Involuntary Hospitalization*, ch. 10, § 4(c)(ii), (iii) (filed 7/3/12); s*ee also* § 25-10-105(a)(i) (requiring the Department of Health to adopt standards governing the State Hospital). This regulation has not been challenged by either party, and does not apply because RB was not placed on convalescent leave. Whether the regulation is authorized by statute is not an issue raised by this appeal, and we do not consider it, but do note that the county's interests when a patient who has improved, but who has not been found to no longer be a danger to himself or others, may differ from those involved when that finding has been made.

representing the public in initial proceedings for involuntary hospitalization under § 25-10-110.  A reasonable, practical construction of the civil commitment statutes is that they were written to  ensure that the head of the hospital or other medical professionals determine a patient's eligibility for discharge, and to provide that only the patient may object and obtain a hearing as provided in § 25-10-118.  Whether the current statutory scheme in which counties must pay for repeated expensive periods of emergency detention imposes an unfair financial burden on the counties is an issue more properly addressed with the Wyoming Legislature.  Affirmed.