# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 157

OCTOBER TERM, A.D. 2013

December 20, 2013

INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS LOCAL UNION NO.
279,

Appellant
(Plaintiff),

v.                                                                          S-13-0038

CITY OF CHEYENNE,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
Julie Nye Tiedeken of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Steven F. Freudenthal of Freudenthal & Bonds, P.C., Cheyenne, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, DAVIS, JJ., and GOLDEN, J., Ret.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]   The International Association of Firefighters Local Union No. 279 (the Union) appeals from the district court's declaratory judgment on issues related to its 2012-2013 collective bargaining session with the City of Cheyenne (the City).  The district court ruled on summary judgment that under the statutory definition of "corporate authorities," the City could negotiate through "either the mayor or any member of the city council" and a quorum of the city council was not required to negotiate.  The district court also determined there were no justiciable controversies over whether the Public Meetings Act and the Public Records Act applied under the circumstances presented.

[¶2]   We reverse the district court's decision that the mayor and/or a single city council member are corporate authorities and conclude the statutes mandate a quorum of the city council to negotiate with the Union.  We affirm its decision that the other two issues are not justiciable, although our reasoning differs on the public meetings issue.

## ISSUES

[¶3]   In its primary brief, the Union presents the following issues on appeal:

1. Was the District Court's declaration that "either the mayor or any member of the city council is a corporate authority within the meaning of Wyoming Statute § 27-10-104" in error?

2. Did the District Court err in determining that it did not have jurisdiction to consider whether Wyoming's Public Meetings Act applies to collective bargaining negotiations?

3. Did the District Court err in determining that there was no justiciable controversy on the issue of whether proposals exchanged by the parties during collective bargaining negotiations are public record?

4. Are proposals exchanged by the parties during collective bargaining negotiations public records?

The City restates the issues as:

A. Under W.S. § 27-10-101(a)(ii), does a mayor and/or city council person constitute a corporate authority authorized to negotiate with the union or is a quorum of the city

1

council the corporate authority that must conduct the negotiations?

B. Does the obligation to "meet and confer in good faith" under W.S. § 27-10-104 impose a blanket rule that negotiations must be conducted in executive session?

C. With respect to issues D and E, *infra,* is the Union seeking an advisory opinion?

D. Assuming that a quorum of the city council is required to conduct the negotiations, is it mandatory for the negotiations to be conducted in executive session?

E. Assuming that a quorum of the city council is required to conduct the negotiations and the city council properly votes to adjourn to an executive session, are proposals exchanged between the parties public records?

## FACTS

[¶4] The material facts of this case are undisputed. The Union is the exclusive bargaining agent for the members of the Cheyenne fire department, and the City is a city of the first class under Wyoming law. Pursuant to the collective bargaining rules set out in Wyo. Stat. Ann. § 27-10-101 through § 27-10-109 (LexisNexis 2013), the Union and the City typically negotiate the wages and other employment terms for fire department members on an annual basis.

[¶5] The Union and the City entered into "Ground Rules" for their negotiation of the 2012-2013 collective bargaining agreement. The mayor, one city council member, and other members of the City's administration and staff were the City's negotiating team. A dispute arose over whether a quorum of the city council was required to negotiate on behalf of the City. Eventually, the city council adopted a resolution stating that the mayor and a single city council member had the authority to negotiate on its behalf. The City also released to the press the proposals exchanged by the parties during negotiation.[1]

[¶6] The Union filed a declaratory judgment action seeking a ruling that a quorum of the city council was required to negotiate with the Union; the City could not, in good faith, unilaterally decide to conduct the negotiating sessions in public; and the proposals exchanged by the parties were not public records. Both parties filed motions for

---

[1] Cheyenne Newspapers, Inc. filed a motion to intervene in the matter, and the Union resisted the motion. The district court denied the motion to intervene, but that ruling is not contested on appeal.

summary judgment. After a hearing, the district court granted summary judgment declaring the City could be represented by the mayor and one other council member during the negotiations and a quorum of the city council was not obligated to participate. It ruled that it did not have jurisdiction to consider whether or not the negotiations should be open to the public because a quorum of the city council was not required to participate and, therefore, the Public Meetings Act did not apply. The district court also concluded the issue of whether the proposals were public records was not justiciable because it was not based upon a current dispute.

[¶7] The Union appealed.

## STANDARD OF REVIEW

[¶8] W.R.C.P. 56(c) governs summary judgments:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Our standard of review for a summary judgment decision is *de novo,* and we use the same materials and follow the same standards as the district court. *Michael's Constr., Inc. v. American Nat'l Bank,* 2012 WY 76, ¶ 8, 278 P.3d 701, 703-04 (Wyo. 2012); *Grynberg v. L & R Exploration Venture*, 2011 WY 134, ¶ 16, 261 P.3d 731, 736 (Wyo. 2011). The *de novo* standard of review also applies to the legal exercise of interpreting statutory language. *Western Wyo. Constr. Co v. Board of County Comm'rs of Sublette County,* 2013 WY 63, ¶¶ 10, 15, 301 P.3d 512, 514-16 (Wyo. 2013); *Vogel v. Onyx Acceptance Corp.,* 2011 WY 163, ¶ 21, 267 P.3d 1057, 1063 (Wyo. 2011). Likewise, jurisdictional issues regarding the justiciability of a declaratory judgment action are questions of law subject to *de novo* review. *See William F. West Ranch, LLC v. Tyrrell,* 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009).

## DISCUSSION

### 1. *Corporate Authority*

[¶9] A municipality's powers are prescribed entirely by statute. *Coffinberry v. Town of Thermopolis,* 2008 WY 43, ¶ 5, 183 P.3d 1136, 1138 (Wyo. 2008). When interpreting statutory language,

> [our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and

primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

*Office of State Lands and Invs. v. Mule Shoe Ranch, Inc.,* 2011 WY 68, ¶ 13, 252 P.3d 951, 954–55 (Wyo. 2011), quoting *Dorr v. Smith, Keller & Assoc.,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010). *See also Vogel*, ¶ 21, 267 P.3d at 1063. The court determines whether a statute is clear or ambiguous as a matter of law. *Office of State Lands,* ¶ 13, 252 P.3d at 955. In arriving at the meaning of a statutory provision, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.,* 2011 WY 81, ¶ 13, 255 P.3d 881, 885 (Wyo. 2011).

[¶10] Wyo. Stat. Ann. §§ 27-10-101 *et seq*. provides for collective bargaining between municipalities and firefighters. Section 27-10-104 states:

> It shall be the obligation of the city, town or county, through its corporate authorities, to meet and confer in good faith with the representative or representatives of the [firefighters'] bargaining agent within ten (10) days after receipt of written notice from said bargaining agent of the request for a meeting for collective bargaining purposes. This obligation shall include the duty to cause any agreement resulting from negotiations to be reduced to a written contract, provided that no such contract shall exceed the term of two (2) years.

The term "corporate authorities" is defined at § 27-10-101(a)(ii) as "the council, commission or other proper officials of any city, town or county, whose duty or duties it is to establish wages, salaries, rates of pay, working conditions, and other conditions of employment of fire fighters."

[¶11] The district court determined that the mayor or a city councilman satisfied the "corporate authorities" requirement of § 27-10-104. The Union claims the mayor and/or a single councilman were not "corporate authorities" under the statute because they could not, by themselves, establish wages, salaries, rates of pay, working conditions or other conditions of employment for the firefighters. Instead, the Union argues, a quorum of the city council was required to negotiate.

4

[¶12] The City counters that the district court correctly ruled the mayor and one councilman met the "corporate authorities" requirement according to our decision in *City of Casper v. Int'l Assoc. of Firefighters, Local 904,* 713 P.2d 1187 (Wyo. 1986). In *Casper,* we held that three employees of the City of Casper, including the personnel director, the chief of the fire department and an administrative analyst, were not "corporate authorities" who could negotiate a collective bargaining agreement with the firefighters. *Id.* at 1189-90. Quoting an earlier case, *Nation v. State ex rel. Fire Fighters Local 279, I.A.F.F.,* 518 P.2d 931, 933 (Wyo. 1974), we stated:

> " * * * [T]he term 'corporate authorities,' as used in statutes such as we are concerned with, means those municipal officers who are either directly elected *by the inhabitants* of the municipality or are appointed in some mode to which *they* [the inhabitants] have given their consent. * * * " (Emphasis and bracketed material in original. Footnote omitted.)

*Casper,* 713 P.2d at 1190. Thus, city employees who were neither elected nor appointed in a manner to which the inhabitants of a municipality had given their consent did not meet the definition of "corporate authorities." We also recognized that the definition of "corporate authorities" includes a second requirement—the person or persons have the "duty to establish wages, salaries, rates of pay, working conditions and other conditions of employment for fire fighters." Section 27-10-101(a)(ii). Under the circumstances of that case, where the City of Casper was governed by Wyo. Stat. Ann. § 15-4-202 (LexisNexis 2013), only the city manager and the city council had the authority to take action on employee salaries. *Casper,* 713 P.2d at 1190.

[¶13] The portions of the *Casper* decision emphasized by the City and the district court in this case stated:

> It may be time consuming and perhaps distasteful for a mayor, councilman, city manager or county commissioner to be present and direct negotiations with the bargaining agent of the fire fighters. . . . .
>
> The legislature has mandated that negotiations with representatives of the bargaining agent of the fire fighters be by the "corporate authorities" of the city, town or county; i.e., by the mayor, city manager, or members of the council of a city or town, and by the county commissioners of a county.

*Id.* at 1190. The City's reliance on these isolated statements ignores the actual holding of the *Casper* case. Although the "mayor . . . or members of the council of a city" were listed as potential corporate authorities, we looked at the governing process for the City

of Casper in deciding who met the two requirements for corporate authorities, i.e., elected or correctly appointed and having the duty to set wages, etc. The same analysis is necessary here.

[¶14] The parties agree that the City of Cheyenne is a city of the first class. *See* Wyo. Stat. Ann. § 15-3-101 through § 15-3-403 (LexisNexis 2013). The City uses the standard method of governance for cities of the first class which involves a "governing body" and mayor. *Id.* The term "governing body" is defined at § 15-1-101(a)(vi) as "the council or commission constituting the elected legislative body of any city or town including the mayor who is the presiding officer." The city council and mayor are elected, and, therefore, meet the first requirement of the "corporate authorities" definition.

[¶15] With regard to the second requirement—the duty to set wages, working conditions, etc. for firefighters—Wyo. Stat. Ann. § 15-5-106(a) (LexisNexis 2013) states "[t]he governing body shall . . . establish uniform working hours and wages for all employees" of fire and police departments. Considering § 15-5-106(a) together with § 15-1-101(a)(vi), the statutory language clearly states the governing body, made up of the city council with the mayor as the presiding officer, has the duty to set the wages, working conditions, etc. of the firefighters. The statute does not state that the mayor or a single council member have the requisite wage setting authority. Therefore, under § 27-10-104, the only party that meets both requirements of the "corporate authorities" definition is the city council and it is the proper party to negotiate with the firefighters.

[¶16] The City argues that it is sufficient if the city council appoints a committee or negotiating team which includes the mayor and a council member to negotiate and then reserves the final decision for itself. The City may take action at public meetings with a quorum of the council members in attendance. *See* Wyo. Stat. Ann. §16-4-402 and § 16-4-403 (LexisNexis 2013). Wyo. Stat. Ann. § 15-1-105 (LexisNexis 2013) sets a quorum as "a majority of all the qualified members of the governing body." While it may be common for city councils to appoint committees or teams to work on various issues and then take action at a public meeting, the legislature has specifically stated that the corporate authority, defined as the governing body which is the city council, must "meet and confer in good faith" with the firefighters in collective bargaining sessions. Section 27-10-104. This statutory language clearly and unambiguously requires the city council, of which the mayor is the presiding officer, to negotiate with the firefighters. The legislative intent is further confirmed later in that statutory section when it states that the obligation to "meet and confer" "shall include the duty to cause any agreement resulting from negotiations to be reduced to a written contract . . ." *Id.* It is possible to guarantee that the negotiated agreement will be finalized by reducing it to written contract only if the party with authority to bind the City, a quorum of the city council, is actually doing the negotiating.

6

[¶17] We recognize it may be burdensome for a quorum of the city council to engage in negotiations on an annual basis. *See Casper,* 713 P.2d at 1190. Nevertheless, as we stated in *Nation,* 518 P.2d at 933:

> It is a cardinal principle of municipal law that a city has only those powers which are expressly granted to it by the legislature or the constitution, or which are necessarily implied from such powers as are granted. A corollary is that a city official has only such powers as are expressly granted to the official by the legislature, or are necessarily implied from those powers which are granted.

(footnotes omitted). *See also Coffinberry,* ¶ 5, 183 P.3d at 1138. Even though the statutory requirements for negotiating may be "time consuming and perhaps distasteful," the legislative mandate is compulsory and must be obeyed. *Casper,* 713 P.2d at 1190. Courts are not in a position to alter or encroach upon the legislature's directives. The City's remedy is with the legislative branch of government.[2] *Id.*

### 2. *Jurisdiction/Justiciability*

[¶18] The district court ruled that it did not have jurisdiction over the other two issues raised in this declaratory judgment action because they did not present justiciable controversies. The other claims were: 1) whether the City was required to negotiate with the Union in private; and 2) whether the proposals exchanged by the parties during the negotiation were public records subject to disclosure. The district court explained its decision as follows:

1. The parties next raise issues concerning the application of the Wyoming Public Meetings Act. Having determined that a quorum of the city council is not required to negotiate, this Court determines that it does not have jurisdiction to consider these issues.

2. The Wyoming Public Meetings Act only applies to meetings, which are defined as "an assembly of at least a quorum of the governing body." Wyo. Stat. Ann. §16-4-402(a)(iii). This Court cannot adjudicate hypothetical

---

[2] The City includes, in its brief, statistics regarding the number of Cheyenne city council members who have other full time jobs and how other Wyoming cities negotiate with firefighters. We note that the underlying documents substantiating these claims were not included in the appellate record because they were not designated by either party. *See* W.R.A.P. 3.05 (setting forth the requirements for designation of appellate record). In any event, whether the burden is onerous or other cities are negotiating in certain ways is irrelevant because the statutes are mandatory.

7

issues or render advisory opinions. *Voss v. Goodman,* 2009 WY 40, ¶ 7, 203 P.3d 415, 418 (Wyo. 2009).

3. Finally, the parties seek a declaration concerning whether the proposals exchanged between the respective negotiating teams are public records subject to disclosure pursuant to the Wyoming Public Records Act. The Plaintiff argues that the proposals are confidential and therefore do not fit within the definition of public record[s] emphasizing [its] belief that negotiation cannot occur in good faith if the proposals are subject to public disclosure. The Defendant asserts such proposals are a public record for which no exceptions contained in the Public Records Act apply.

4. On this issue there is no justiciable controversy concerning an interpretation of the Wyoming Public Records Act. There are no current facts to support a dispute between the parties; instead they rely on facts from the 2012 negotiations. The Court's judgment could not operate effectively because there is not enough information concerning the nature of the "proposals" that would be exchanged. As a result no appropriate analysis of the issues as they relate to the Public Records Act can be conducted. Any ruling would instead be purely political or academic. Plaintiff further attempts to couch this dispute as whether the negotiations will be in "good faith." The Court cannot interpret the meaning of good faith or the public records act based on what the parties perceive will happen during their upcoming negotiations.

[¶19] The Uniform Declaratory Judgments Act, Wyo. Stat. Ann. § 1-37-101 through § 1-37-115 (LexisNexis 2013) (UDJA), governs declaratory judgment actions. Section 1–37–102 states: "Courts of record within their respective jurisdictions may declare rights, status and other legal relations whether or not further relief is or could be claimed." Section 1-37-114 emphasizes that the act is remedial with the purpose of settling and affording relief from uncertainty about legal relations.

[¶20] Section 1-37-103 sets forth the basic parameters of the act:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming

8

> constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

In order for a court to have jurisdiction under the UDJA, "the 'right' to be declared must fall within the scope of the act and the plaintiff must be an 'interested' person." *West,* ¶ 11, 206 P.3d 726-27, citing *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 8, 79 P.3d 500, 505 (Wyo. 2003).

[¶21]   The "requirement of an 'interest' captures the basic doctrine that there must be a justiciable controversy before relief will be granted." *Barber v. City of Douglas,* 931 P.2d 948, 951 (Wyo. 1997).  A justiciable controversy is broadly defined as a dispute fit for judicial resolution, and includes the concepts of standing, ripeness and mootness. *Reiman Corp. v. City or Cheyenne,* 838 P.2d 1182, 1186 (Wyo. 1992)*.*

[¶22]   Wyoming uses a four-part test to determine whether a justiciable declaratory judgment action exists.

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Cox,* ¶ 10, 79 P.3d at 505, quoting *Reiman,* 838 P.2d at 1186.  *See also Brimmer v. Thomson,* 521 P.2d 574, 578 (Wyo. 1974).

9

[¶23] "'[T]he Declaratory Judgments Act gives the courts no power to determine future rights or anticipated disputes or controversies.'" *West,* ¶ 13, 206 P.3d at 727, quoting *White v. Board of Land Comm'rs,* 595 P.2d 76, 79 (Wyo. 1979). The controversy must, instead, be existing and genuine in order for the court to have jurisdiction to render a declaratory judgment. *Id.* We do not decide a declaratory judgment action that is simply "a request for legal advice and opinion." *White,* 595 P.2d at 80. We cannot "'decide or declare the rights or status of parties upon a state of facts which is future, contingent, and uncertain.'" *Anderson v. Wyo. Dev. Co.,* 154 P.2d 318, 341 (Wyo. 1944), quoting *Tanner v. Boynton Lumber Co.,* 129 A. 617, 619 (N.J. 1925).

[¶24] Wyoming's Public Meetings Act, Wyo. Stat. Ann. § 16-4-401 through § 16-14-408 (LexisNexis 2013) states that the "agencies of Wyoming exist to conduct public business" and deliberations and actions should generally be taken openly. Section 16-4-401. The term agency includes municipalities. Section 16-4-402(a)(ii). Under § 16-4-403, "meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided." A "meeting" is defined as "an assembly by at least a quorum of the governing body of an agency . . . . " Section 16-4-402(a)(iii). Section 16-4-405(a)(x) provides that "[a] governing body of an agency may hold executive sessions not open to the public . . . [t]o consider accepting or tendering offers concerning wages, salaries, benefits and terms of employment during all negotiations."

[¶25] After ruling that a quorum of the city council did not have to negotiate, the district court further ruled the public meetings requirements did not apply so there was no justiciable controversy. We have concluded that a quorum of the city council must negotiate with the Union; consequently, their negotiations will be governed by the public meetings requirements. The Union claims, therefore, the issue is justiciable and we should rule that, as a matter of good faith, the City must negotiate in executive session if the Union does not agree to public negotiations. The Union cites a number of cases from other jurisdictions holding that good faith requires the governing body to negotiate in private if the Union refuses to agree to public negotiations. The City counters that the issue is theoretical, and, in any event, § 16-4-405(a)(x) uses the discretionary language "may," giving it discretion to decide whether to negotiate in executive session or not. It also claims the majority of recent decisions from other jurisdictions have refused to adopt a per se rule that collective bargaining must be done in executive session.

[¶26] Given a quorum of the city council has not yet negotiated with the Union, the City has not had the opportunity to decide whether or not to adjourn into executive session. The Union does not assert that the City actually failed to act in good faith and any decision we render on the matter will be wholly advisory. Moreover, the parties apparently did negotiate in private during the 2012 negotiations, making this issue even more theoretical. The issue is not justiciable at this time.

[¶27] The Union also argues that the issue of the public nature of the proposals exchanged by the parties during negotiations is justiciable. The City apparently released the proposals involved in the 2012 negotiations to the press, and the Union claims this was a violation of the public meetings and public records statutes. At the time the City released the 2012 proposals to the press, Wyo. Stat. Ann. § 16-4-201(a)(v)[3] stated:

> (v) "Public records" when not otherwise specified includes the original and copies of any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing or other document, regardless of physical form or characteristics that have been made by the state of Wyoming and any counties, municipalities and political subdivisions thereof and by any agencies of the state, counties, municipalities and political subdivisions thereof, or received by them in connection with the transaction of public business, except those privileged or confidential by law[.]

[¶28] Wyo. Stat. Ann § 16-4-202(a) states: "All public records shall be open for inspection by any person at reasonable times . . . except as provided in this act or as otherwise provided by law . . . ." The Union argues that the proposals were not public records because they were "privileged or confidential by law" under the executive session exception to the public meetings act. Section 16-4-405(b) states:

> (b) Minutes shall be maintained of any executive session. Except for those parts of minutes of an executive session reflecting a members' objection to the executive session as being in violation of this act, minutes and proceedings of executive sessions shall be confidential and produced only in response to a valid court order.

---

[3] Section 16-4-201(a)(v) (LexisNexis 2013) currently states:

> (v) "Public records" when not otherwise specified includes any information in a physical form created, accepted, or obtained by the state or any agency, institution or political subdivision of the state in furtherance of its official function and transaction of public business which is not privileged or confidential by law. Without limiting the foregoing, the term "public records" includes any written communication or other information, whether in paper, electronic, or other physical form, received by the state or any agency, institution or political subdivision of the state in furtherance of the transaction of public business of the state or agency, institution or political subdivision of the state, whether at a meeting or outside a meeting[.]

11

According to the Union, the proposals are exempt as part of the "proceedings" of the executive session.

[¶29]  The Union is requesting legal advice and opinion.  As we stated earlier, a quorum of the city council has not yet negotiated with the Union in a public meeting and there has been no executive session, so there is no basis to determine whether the proposals were covered under the exemption or not.  Furthermore, the proposals have already been released to the press.  In other words, the proverbial horse is already out of the barn, and any decision we would render would not have any force or effect on an actual controversy.

[¶30]  Reversed in part and affirmed in part.